IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
WESTERN DIVISION

| | | |
|---|---|---|
| SHELLEY BACON, | ) | |
| Independent Administrator for the | ) | |
| Estate of **PATRICK BACON**, | ) | |
| | ) | |
| Plaintiff, | ) | JURY DEMANDED |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

<u>COMPLAINT</u>

Now comes the Plaintiff, SHELLEY BACON, Independent Administrator for the Estate of PATRICK BACON, by and through her attorneys of DVORAK LAW OFFICES, LLC, and MEYER & KISS, LLC, and complains against the UNITED STATES OF AMERICA, stating the following:

**Parties, Jurisdiction & Venue:**

1.  This action is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2674.

2.  Shelley Bacon is the natural mother of Patrick John Bacon, deceased.

3.  She has been appointed Independent Administrator of Patrick Bacon's estate by the Circuit Court of Carroll County (Illinois).

4.  At all times relevant to this Complaint, Patrick Bacon was an inmate at USP Thomson, in Thomson, Illinois, in Carroll County, Illinois, in the Northern District of Illinois.

1

5. At all times relevant to this Complaint, USP Thomson was a prison operated by the Bureau of Prisons, an agency of the Defendant United States of America.

6. On December 12, 2022, the Plaintiff submitted an FTCA Claim form (OMB 1105-0008) with supporting materials to the Director of the Bureau of Prisons in Washington, D.C., via FedEx.

7. The Bureau of Prisons received said claim form on December 13, 2022.

8. More than six months having elapsed since the claim was received and neither the Bureau nor any of the Defendants' agencies having made any formal response, the Plaintiff now files suit within six months of that six-month period having ended.

Facts

9. USP Thomson is a federal prison owned and operated by the Bureau of Prisons, an agency of the United States Government.

10. USP Thomson is staffed by Bureau of Prisons correctional personnel who, at all times relevant to these allegations, were acting within the course and scope of their duties as federal employees.

11. In the early hours of December 19, 2020, Patrick Bacon was sent to MercyOne Emergency Department in Clinton, Iowa where he was pronounced dead.

12. Upon information and belief, personnel at Thomson have claimed in reports that they found Patrick Bacon unresponsive, with a plastic bag over his head

at approximately 12:25 a.m., and that they attempted CPR before calling the ambulance, suggesting that the manner of death was suicide.

13. Shelley Bacon, the Plaintiff, and her husband, Dr. Barry Bacon, the decedent's father, live in Washington State.

14. The Bacons were called by one or more Thomson employees early on the morning of December 19, 2020, and told a story the Bacons believed was an intentionally false cover story: that their son allegedly committed suicide.

15. Dr. Barry Bacon, a physician with emergency department experience, asked for more details about the circumstances of his son's death.

16. Suicide seemed especially implausible to Dr. Bacon as his son's conviction had been vacated by an *en banc* ruling of the Ninth Circuit weeks prior to his death, an important legal victory that meant that Patrick would eventually be sent to the District of Southern California for a new trial.

17. A Thomson administrator, upon information and belief an assistant warden, told Barry Bacon that he needed to process his grief and that it was not an appropriate time to for the Bacons to begin a factual investigation.

18. An autopsy of Patrick Bacon's body was conducted on December 21, 2020, by State Medical Examiner Dennis Klein, M.D..

19. Dr. Klein apparently had access to reports from the prison and referred to those reports in his autopsy report.

20. From those reports, Dr. Klein believed it to be the case that Patrick had been found with a bag over his head, and that staff had attempted CPR.

21. The Bacons do not believe Patrick placed a bag around his own head or attempted suicide based on the information that they have gathered about this incident.

22. Based on said reports tendered to Dr. Klein by one or more Thomson officials, Dr. Klein concluded that the cause of death was suffocation, and the manner of death was suicide.

23. However, Dr. Klein also found that Patrick Bacon's liver had sustained serious lacerations, and that as much as 1.3 liters of blood were in his stomach.

24. Dr. Klein concluded that these injuries must have been caused by inexpertly performed CPR.

25. However, 1.3 liters would constitute approximately a quarter of the blood in Patrick's body, and Dr. Barry Bacon concluded that it is exceedingly unlikely that such a serious injury was the result of a failed attempt at CPR.

26. Additionally, Dr. Barry Bacon concluded that even if the lacerations had been caused by CPR, it is exceedingly unlikely that that much blood would have issued from an internal wound when, as was purportedly the case, Patrick Bacon's heart had stopped beating and there was no circulation.

27. Upon reviewing the autopsy report it was Dr. Barry Bacon's medical opinion that his son had been badly kicked or beaten about the abdomen while he was still alive, either by prison staff or by another inmate, a circumstance being covered up by Thomson staff.

28. Dr. Barry Bacon contacted the medical examiner and asked him whether he would have found that the cause of death was suffocation and the manner suicide if he had not been told that a bag had been found over Patrick Bacon's head.

29. The medical examiner admitted to the Bacons that if he had not been told about the bag, he would have concluded that the cause and manner of death were unknown, not suicide. He further related that it would have been useful to have inspected the bag as part of his examination, but that no bag had been supplied to him.

30. USP Thomson is an infamously mismanaged prison in which staff on inmate and inmate on inmate violence is routine, tolerated, and/or encouraged by supervisory personnel.

31. The Bureau of Prison's Special Management Unit ("SMU") was brought to USP Thomson in 2018, after misconduct and abuses were uncovered at USP Lewisburg, the previous home of the SMU.

32. Upon information and belief, many staff members previously employed at USP Lewisburg transferred to USP Thomson at that time.

33. One major problem at USP Lewisburg had been "double-celling," a practice of deliberately housing dangerous inmates with vulnerable inmates in order to encourage violence.

34. Double-celling at the SMU in Lewisburg led to fights, attacks and even deaths. From 2008 until July 2011, Lewisburg's SMU had 272 reported incidents of violence.

35. USP Thomson imported this practice from USP Lewisburg, despite being on notice of the problematic nature of this practice.

36. Upon information and belief, federal statistics show 160 federal prisoners were killed between 2001 and 2016, an average of 10.6 deaths per year throughout the federal system, which has 106 facilities, the equivalent of 0.1 deaths per year at a given facility.

37. Thompson's death rate is exponentially higher, i.e. five deaths in a one year period that included this incident, or 50 times higher than an average federal prison.

38. On March 5, 2020, Thomson inmate Matthew Phillips was beaten to death by a fellow inmate.

39. On November 27, 2020, Thomson inmate Edsel Aaron Badoni was beaten to death by a fellow inmate.

40. On December 3, 2020, Thomson inmate Boyd Weekly was beaten to death by a fellow inmate.

41. The death of Patrick Bacon occurred on December 19, 2020.

42. On February 28, 2021, Thomson inmate Shay Pinary was beaten to death by a fellow inmate.

43. Given the overall rate of inmate deaths within the BOP system, Thomson is clearly abnormal.

44. When Warden Thomas Bergami arrived at Thomson in 2022, he observed was he has subsequently described to the media as staff attitude that was "the worst I've seen in 31 years."

45. Warden Bergami observed staff move prisoners up and downstairs, in shackle and backwards, a method he had never seen to move prisoners anywhere.

46. Warden Bergami observed excessive use of blackbox handcuffs, which are normally used only for the most dangerous prisoners.

47. Warden Bergami observed staff moving prisoners across the yard the freezing winter weather without shoes or coats.

48. Warden Bergami further observed excessive use of four-point restraints (which, in cases of prolonged use, is a form of torture), including on compliant inmates for whom the procedure was wholly unnecessary.

49. Since his retirement in 2023, Warden Bergami has reported that his attempts to fire abusive staff were overruled by BOP superiors.

50. Associate Warden Denny Whitmore, who also retired in 2023, similarly reported to the media that his efforts to discipline or terminate guards were overruled by BOP officials.

51. Prior to his retirement, Warden Bergami received a warning from certain USP Thomson inmates that guards had bribed inmates to physically attack

him (Warden Bergami) and his immediate subordinates, in revenge for Warden Bergami's attempts to reform USP Thomson.

52. At a Senate judiciary hearing on September 13, 2023, BOP Director Colette Peters spoke about the decision to close the Special Management Unit at USP Thomson, citing abuse and misconduct. "I too, hadn't seen anything like that in my 30-plus year career in corrections," she said.

53. The culture of impunity that governed USP Thomson at all times relevant to this complaint, meant that inmates, including the late Patrick Bacon, could not take steps to protect themselves from threats of violence because any requests for protection were met with refusals, and threats of violence by prison staff, or discipline for making such requests.

54. Upon information and belief, Patrick Bacon was seriously beaten by inmates or correctional personnel, late on the evening of December 18, 2020, or very early on the morning of December 19, 2020, causing or substantially contributing to his death.

55. USP Thomson personnel, upon information and belief, submitted reports falsely claiming that Patrick Bacon committed suicide in order to cover up their own misconduct which either directly caused Patrick's serious injuries, or encouraged/allowed inmate violence against Patrick that caused Patrick's death.

56. Upon information and belief, Thomson personnel have engaged and continue to engage in an attempt to cover up the circumstances of Patrick Bacon's

Death and have refused to provide even basic information to his family and/or their attorneys.

57. On December 21, 2020, the Plaintiff's attorneys directed an email to the warden, asking that he preserve "all records in the care, custody, or control of the BOP or any agent thereof, relating in any way to Patrick or the circumstances of his death. In particular, please preserve all electronic records, including in particular video tape, depicting the activity in and around Patrick's cell during the 10 days before his death, the discovery of his unresponsive body on December 19, his removal from his cell, and the movement of his body through the facility, up to the point where he left BOP property. Also preserve all property, including but not limited to what was on his body and head at the time of discovery."

58. On February 1, 2021, attorneys with the Office of the Federal Defenders of Eastern Washington and Idaho, Patrick's criminal defense team, submitted a FOIA request to the BOP seeking Patrick Bacon's full BOP file and related administrative records. To date, the federal defenders have received no response.

59. On July 29, 2023, the undersigned attorneys served upon the Bureau of Prisons certain FOIA requests seeking similar information, but to date have received no response.

60. Shelley Bacon brings claims for wrongful death and survival claims for the suffering her son endured before he died, as well as claims of negligence

and/or willful and wanton conduct, battery, intentional infliction of emotional distress, as well as negligent and or willful and wanton hiring and/or supervision.

## Request for Relief

WHEREFORE, the Plaintiff respectfully requests compensatory and punitive damages, as well as any costs or fees allowed by law.

## PLAINTIFF DEMANDS A TRIAL BY JURY

/s/Richard Dvorak
Richard Dvorak

DVORAK LAW OFFICES, LLC
1 Walker Avenue, Suite 204
Clarendon Hills, IL 60514
Telephone: (630) 590-9158
Fax: (312) 873-3869
richard.dvorak@civilrightsdefenders.com

/s/ Louis Meyer
Louis Meyer

/s/Daniel Kiss
Daniel Kiss

MEYER & KISS, LLC
53 West Jackson Blvd., Suite 724
Chicago, Illinois 60604
Telephone: 312.765.0100
Fax 312.585.7803
louismeyer@meyerkiss.com
dankiss@meyerkiss.com